IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

WARD T. EVANS,                  :
                                :
        Petitioner,             :
                                :
    v.                          :   Civil Action No. 09-488-JJF
                                :
PERRY PHELPS, Warden,           :
and ATTORNEY GENERAL            :
OF THE STATE OF                 :
DELAWARE,                       :
                                :
        Respondents.            :

---

Ward T. Evans. Pro se Petitioner.

Gregory E. Smith, Deputy Attorney General of the DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**

July 13, 2010

Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Ward T. Evans ("Petitioner"). (D.I. 2; D.I. 6.) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I. FACTUAL BACKGROUND

On November 12, 1981, Petitioner had been living in his brother's Hartly residence for a little more than a week. Petitioner's brother had a fourteen-year-old step daughter, D.P., who, along with her mother and thirteen-year-old brother, also lived at the Hartly residence. Near six o'clock that evening, Petitioner encountered D.P. at the kitchen sink washing dishes with her brother. Petitioner asked D.P. to go with him to Oasis, a local bar and package store, to purchase beer. After repeated efforts, Petitioner convinced D.P. to accompany him to the store, but insisted that her brother remain at home. (D.I. 20, at pp. 1-2.)

Petitioner drove to Oasis and purchased beer. Instead of returning home, however, Petitioner turned down a dirt road. D.P. begged him to turn around and go home. Petitioner switched seats with D.P. and told her to "drive and shut up." D.P. began to drive towards her home when Petitioner told her to stop the van. She refused, and he then forced the vehicle to stop by

1

shifting the van into neutral or park. Petitioner got back into the driver's seat and drove away from the Hartly residence. Id.

After a short period of time, Petitioner stopped the van and told D.P. that he just wanted to talk to her. She begged him to go home. Petitioner then grabbed D.P. and attempted to have her sit on his lap. She resisted. Petitioner continued to struggle with her and proceeded to undo her pants. Petitioner first digitally penetrated D.P.'s vagina, causing her to struggle and scream. Petitioner next compelled D.P. to perform fellatio upon him. Petitioner then forced D.P. into the back of the van, pulled down her pants around her knees, removed his pants, forced her onto her back, and penetrated her vagina with his penis. Throughout the rape, D.P. struggled physically, and screamed out repeatedly. After ejaculating, Petitioner returned to the driver's seat of the van and drove back to the Hartly residence. As soon as Petitioner left her presence, D.P. ran to a neighbor's house in hysterics. Id.

D.P. went to Kent General Hospital at eight o'clock that same evening. The treating physician observed rips to the posterior of D.P.'s labia minor on each side, as well as fresh bruising on her back. Medical personnel collected samples of bodily fluid, specifically semen, present on D.P.'s body and clothing. Id.

The following day, Petitioner called D.P.'s mother, his sister-in-law. When she asked Petitioner why he had touched her daughter, Petitioner responded that he was under a lot of pressure. Shortly thereafter, Petitioner fled Delaware. In February 1982, he was captured as a fugitive in Georgia. Id.

## II. PROCEDURAL BACKGROUND

### A. Delaware State Courts

On April 5, 1982, the Kent County grand jury indicted Petitioner on a single count of first degree rape. A Delaware Superior Court jury convicted Petitioner on that charge, and the Delaware Superior Court sentenced Petitioner on May 26, 1983, to a life sentence with the possibility of parole. The Delaware Supreme Court affirmed Petitioner's conviction and sentence on June 21, 1984. Evans v. State, 483 A.2d 633 (Del. 1984)(Table).

On September 17, 1984, Petitioner filed motions for a new trial and for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied those motions on October 25, 1984. Petitioner moved to amend his motions. On October 21, 1985, the Superior Court denied the motion to amend, and re-affirmed its prior denial of Petitioner's motions. The Delaware Supreme Court affirmed the Superior Court's decision. Evans v. State, 1986 WL 16784 (Del. May 7, 1986).

Over the course of the next two decades, Petitioner filed ten more Rule 61 motions, two petitions for writ of habeas corpus, two motions for correction of illegal sentence, one motion for reduction of sentence, one motion for new trial, one motion for modification of sentence, and one petition for writ of mandamus.  The Delaware State Courts denied all of these motions and petitions, and the Delaware Supreme Court affirmed the appeals taken from those decisions.  See generally (D.I. 20.)

**B.   Federal Courts**

From 1982 through 1984, while his direct appeal was still pending in the Delaware Supreme Court, Petitioner filed his first of three federal habeas petitions ("Petition I", "Petition II", and "Petition III") in this Court.  The Court denied all three Petitions, and the Third Circuit affirmed those decisions.  See generally (D.I. 20, at pp. 6-7.0

Petitioner filed his fourth petition ("Petition IV") in November 1989.  The Court denied Petition IV on March 25, 1991, and the Third Circuit denied a certificate of probable cause.  The United States Supreme Court denied certiorari on May 18, 1992.  Id.

Petitioner filed his fifth petition ("Petition V") in this Court in April 1993.  The Court dismissed the Petition on November 23, 1994.  Id.

On December 11, 2008, Petitioner filed in the Third Circuit a motion for permission to file a second or successive habeas petition, asserting three grounds for relief ("Petition"). (D.I. 2.) The Third Circuit found that Petitioner's claims of trial court error and prosecutorial misconduct could have been presented in a prior petition, and therefore, dismissed those claims as second or successive. However, the Third Circuit concluded that Petitioner's administration of sentence claim was not second or successive because it could not previously have been brought. Accordingly, the Third Circuit returned the Petition to this Court for review of his administration of sentence claim.

## III. DISCUSSION

Petitioner asserts the following three claims in his pending Section 2254 Petition: (1) the Delaware Supreme Court's interpretation of Delaware law in 2005, deprived Petitioner from earning good time credits on his life sentence; (2) during his criminal trial, the Superior Court failed to instruct the jury on the lesser-included offense of second degree rape; and (3) the prosecutor obtained Petitioner's conviction through the use of perjured testimony. (D.I. 2.) Petitioner also amended his Petition to assert an additional claim of judicial bias/improper conduct that occurred during his post-conviction appeal in 2008. (D.I. 6.) The Court will refer to this additional claim as Claim

Four.

The Third Circuit has previously concluded that Petitioner's second and third claims constitute impermissible second or successive claims. Accordingly, the Court cannot consider Claims Two and Three in the instant proceeding, and therefore, the Court will dismiss those claims. See In Re Ward T. Evans, C.A. No. 08-4775, Order (3d Cir. Dec. 24, 2008); Pace v. DiGuglielmo, 544 US. 408, 416 (2005)(indicating that the second or successive determination can be made on a claim by claim basis).

With respect to Claim Four, Petitioner contends that the Delaware Supreme Court erred during Petitioner's most recent post-conviction appeal by permitting Justice Ridgely, who had already recused himself, to consider Petitioner's motion to rehear the appeal en banc. See Evans v. State, No. 657, 2007, Order (Del. 2008)(Order designates Justices Steele, Holland, Berger, Jacobs, and Ridgely as the Justices constituting the court en banc.) However, the Delaware Supreme Court issued a corrected Order, dated February 13, 2009, indicating that Justice Ridgely had not been included in the en banc court. See Evans v. State, No. 657,2007, Corrected Order (Del. Feb. 13, 2009)(listing Justices Steele, Holland, Berger, and Jacobs as the members of the court who heard Petitioner's en banc appeal). Accordingly, the Court concludes that Petitioner's argument with respect to Claim Four is factually baseless, because Justice Ridgely did not

participate in the en banc appeal, and therefore, the Court will dismiss Claim Four.

In his remaining claim, Petitioner contends that the Delaware Supreme Court violated his Federal Due Process rights in April 2005, by deciding that good-time credits only applied to his parolable life sentence prior to the enactment of Delaware's Truth-in-Sentencing Act of 1989 ("the Truth-in-Sentencing Act"), for the purpose of accelerating his parole eligibility date. According to Petitioner, the Delaware Supreme Court should have interpreted his parolable life sentence, issued prior to the enactment of the Truth-in-Sentencing Act, as a term of 45 years, thereby permitting the Department of Correction to apply his good-time credits for the purpose of calculating a conditional release date pursuant to Del. Code Ann. tit. 11, § 4348. To place Claim One in context, the Court will provide a brief summary of the relevant Delaware law regarding good time credit, parole, and conditional release.

The Delaware General Assembly enacted Sections 4346 and 4348 in 1964. Section 4346 governs a prisoner's parole eligibility, and provides that an inmate is eligible to apply for parole after serving one-third of the term imposed by the court, adjusted for merit and good behavior credits. Del. Code Ann. tit. 11, § 4346(a). Release of an inmate on parole under Section 4346 is discretionary. Evans, 872 A.2d at 554. Section 4348 governs an

inmate's conditional release upon the earning of merit and good behavior credits. Del. Code Ann. tit. 11, § 4348. Conditional release of an eligible inmate under Section 4348 is mandatory, and an inmate who has accumulated sufficient good behavior and merit credits must "be released from incarceration on his or her short-term release date, i.e., the maximum period of incarceration less accumulated good behavior and merit credits." Id.

The Delaware General Assembly enacted the Truth-in-Sentencing Act on June 29, 1990, and it applies to crimes committed after that date. Del. Laws C. 130, § 3; Del. Code Ann. tit. 11, § 4354. The Truth-in-Sentencing Act completely eliminated parole as a method of obtaining early release, but did not eliminate conditional release as a method for obtaining early release. Crosby, 824 A.2d 894, 899-900 (Del. 2003). Thus, to summarize,

> [u]nder the system in effect before the enactment of the Truth-in-Sentencing-Act, good time operated in two ways to permit an inmate's early release from his term of incarceration. First, an inmate, in most cases, would have become eligible for parole under Del. Code Ann. tit. 11, § 4346 after serving one-third of the sentence imposed by the court, after the sentence was reduced by any good time award. Second, even if the inmate failed to obtain a discretionary grant of parole under Del. Code Ann. tit. 11, § 4346, the inmate could still obtain early release from his prison term, called "conditional release," solely by virtue of his accumulated good time credits. Conditional release is an early release mechanism that operates only if parole is not employed.

Snyder v. Andrews, 708 A.2d 237, 244 (Del. 1998). However, under

8

the system in effect after the enactment of the Truth-in-Sentencing Act, "the reduction of a sentence by earned good time credit [will only] result in conditional release under section 4348 for eligible inmates," not in release via parole. Evans, 872 A.2d at 554.

Finally, Section 4346(c) expressly provides that, in order to determine the parole eligibility of an inmate sentenced to life with the possibility of parole, the life sentence is to be considered a 45 year term. Del. Code Ann. tit. 11, § 4346(c)(Repl. 1979). Section 4348, the conditional release statute, does not contain any language regarding life sentences.

The issue in this case is whether the reference to a 45 year term for a life sentence in Section 4346(c) permits a prisoner's parolable life sentence to be viewed as a 45 year term for the purpose of determining a conditional release date under Section 4348. The Delaware Supreme Court addressed this issue in two cases prior to addressing it in 2005, with respect to Petitioner. The first time the Delaware Supreme Court addressed this question was in Jackson v. Multi-Purpose Criminal Justice Facility, 700 A.2d 1203, 1207 (Del. 1997), overruled in part by Crosby v. State, 824 A.2d 894 (Del. 2003). In Jackson, the state court was asked to determine if a prisoner with a parolable life sentence imposed prior to the Truth-in-Sentencing Act is entitled to conditional release under Section 4348 when denied parole under

9

Section 4346. Construing the plain meaning of the statutes, the Jackson court held that a prisoner serving a life sentence imposed prior to the Truth-in-Sentencing Act, with the possibility of parole, cannot obtain conditional release under Section 4348 because "[b]oth [Section 4346 and Section 4348] were enacted by the General Assembly in 1964 . . . [and] [i]f the General Assembly had intended to permit those inmates serving life sentences with the possibility of parole to be eligible for conditional release under Section 4348, presumably it would have stated so expressly, as it did in Section 4346." Id. The Delaware Supreme Court explained that "[t]he absence of a corresponding provision in Section 4348 [defining a life sentence as a fixed term of 45 years] evidences a deliberate decision by the General Assembly to exclude those serving life sentences from qualifying for early release under Section 4348. This Court may not engraft upon Section 4348 language which has been clearly excluded therefrom." Id. (internal citation omitted).

The Delaware Supreme Court faced a slightly different issue in 2003 in Crosby v. State, 824 A.2d 894 (Del. 2003). In Crosby, the Delaware Supreme Court addressed whether a non-violent habitual offender's life sentence imposed after the enactment of the Truth-in-Sentencing Act pursuant to Del. Code Ann. tit. 11, § 4214(a) violated the Eighth Amendment. The Delaware Supreme Court explained that its "ultimate resolution of Crosby's Eighth

Amendment argument is dependent, in part, upon whether Crosby's life sentence as a habitual offender under section 4[2]14(a) is considered to be a term of 45 years, with the possibility of earning a substantial sentence diminution through good time credits; or is considered to be a natural life sentence with no possibility of reduction or release prior to death." Id. at 897. The Delaware Supreme Court proceeded to review the history of the habitual offender statute as well as the effect of the Truth-in-Sentencing Act on Delaware's sentencing laws, and opined that § 4346 (parole eligibility) and § 4348 (conditional release) should be read in pari materia such that § 4348 incorporates the definition of a life sentence contained in § 4346(c) as being a fixed term of 45 years. Id. at 898-99. Then, after stating that, "to the extent that Jackson is inconsistent with this opinion, it is overruled," the Delaware Supreme Court held that "a person sentenced to life as a habitual offender pursuant to section 4214(a) is to be considered as having been sentenced to a fixed term of 45 years [under section 4346(c)] and qualifies for conditional release pursuant to section 4348, based upon good time credits earned pursuant to section 4381." Id. at 899, 902.

One year later, this time dealing specifically with Petitioner's case ("Evans I"),[1] the Delaware Supreme Court was again presented with the question first presented in Jackson,

---

[1] Evans v. State, 2004 WL 2743546 (Del. Nov. 23, 2004).

namely, whether a prisoner with a parolable life sentence, imposed prior to the Truth-in-Sentencing Act, should be viewed as serving a 45 year term, thereby entitling the prisoner to conditional release under Section 4348. Initially, the Evans I court decided that Crosby required an inmate's parolable life sentence imposed prior to the Truth-in-Sentencing Act to be treated as a 45 year term for purposes of determining the inmate's qualification for conditional release. In response to Evans I, the Delaware General Assembly enacted an amendment to the Delaware State Code, House Bill No. 31, which purported to overrule Evans I. Thereafter, the Delaware Supreme Court agreed to reconsider its decision in Evans I.

On April 11, 2005, the Delaware Supreme Court decided Evans II, in which it: (1) withdrew the Evans I decision;(2) held that House Bill No. 31 was unconstitutional and void; and (3) held that a life sentence with the possibility of parole imposed prior to the enactment of the Truth-in-Sentencing Act was not defined as a 45 year term. Evans, 872 A.2d at 543-53. The Evans II court explained that Crosby did not control the issue in Petitioner's case, because Petitioner was a violent offender sentenced to life **prior** to the enactment of the Truth-in-Sentencing Act, whereas Crosby was a non-violent habitual offender sentenced to life **after** the enactment of the Truth-in-Sentencing Act. Id. at 557-58 (emphasis added). As a result,

the Delaware Supreme Court opined that Petitioner's situation was governed by its 1997 decision in Jackson because the defendant Jackson, "like [Petitioner], was sentenced to life imprisonment, with the possibility of parole, before the enactment of Truth-in-Sentencing [and] [t]he issue presented in Jackson was whether an inmate who is serving a life sentence with the possibility of parole is entitled to conditional release by the Department of Correction under Del. Code Ann. tit. 11, § 4348." Evans, 872 A.2d at 554-55. In deciding that Jackson set the applicable rule, the Delaware Supreme Court observed that its statements in Crosby about "the operation of section 4346 and section 4348 upon the pre-Truth-in-Sentencing life sentences with the possibility of parole for violent crimes, were overbroad and unnecessary to the holding. That obiter dicta in Crosby is what caused the initial confusion in [Evans I]." Id. at 558. The Delaware Supreme Court then explained

> [w]hen [Petitioner] was sentenced to life with the possibility of parole, the statutory sentencing system did not permit [Petitioner] to be released prior to his death- unless parole was granted. Similarly, good time credits only applied to [Petitioner's] natural life sentence for purposes of accelerating [Petitioner's] parole eligibility date. Accordingly, we hold that [Petitioner] - like Jackson - is not eligible for conditional release and must remain incarcerated until his death, unless he is granted parole.

Id. at 558.

Petitioner challenged the Evans II decision in 2006, arguing that the Delaware Supreme Court's 2005 interpretation of the

applicable sentencing statutes violated his right to Due Process. Evans v. State, 918 A.2d 1170 (Table), 2005 WL 5118396 (Del. Jan. 24, 2007). The Delaware Supreme Court denied Petitioner's Due Process challenge, explicitly holding that its statutory interpretation in Evans II was not unforeseeable. Id. The Delaware Supreme Court did not provide any explanation for its conclusion that its decision in Evans II was not unforeseeable.

In this proceeding, Petitioner again contends that the Delaware Supreme Court's decision in Evans II was unforeseeable, thereby violating his Due Process rights. Distilled to its core, Petitioner's argument is that the retroactive application of the Delaware Supreme Court's interpretation of Delaware law in Evans II terminated his good time and merit credit which, in turn, increased his punishment. (D.I. 23.) Because the Delaware Supreme Court denied this same Due Process argument as meritless in its January 24, 2007 decision, the Court can only grant habeas relief if that decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

The test for determining if the retroactive application of a judicial interpretation of state law violates Due Process is one of foreseeability. Bouie v. Columbia, 378 U.S. 347, 352 (1964). A judicial decision is unforeseeable and may not be given retroactive effect if the decision is "unexpected and

indefensible by reference to the law which had been expressed prior to the conduct in issue," or when the court's construction is at odds with the plain language of the statute. Rogers v. Tennessee, 532 U.S. 451, 456, 462 (2001); Bouie, 378 U.S. at 356. In the Third Circuit, the rule against the unforeseeable retroactive application of a judicial decision applies with equal force to "after-the-fact increases in the degree of punishment." Helton v. Fauver, 930 F.2d 1040, 1045 (3d Cir. 1991).

Having reviewed the record, the Court concludes that the retroactive application of Evans II to Petitioner's sentence did not violate Petitioner's Due Process rights. First, at the time of Petitioner's sentencing in 1983, the Delaware Supreme Court had not addressed the issue as to whether the reference to a 45 year term contained in Section 4346(c) applied with equal force to determining a conditional release date under Section 4348. Therefore, the Court concludes that the Delaware Supreme Court's interpretation of those two statutory provisions in Evans II was neither "unexpected nor indefensible by reference to the law which had been expressed prior to the conduct in issue." Rogers, 532 U.S. at 456, 462.

Likewise, the Court concludes that the Delaware Supreme Court's interpretation of Section 4346(c) and Section 4348 in Evans II did not constitute an unforeseeable change in parole and conditional release determinations for life sentences imposed

15

prior to the Truth-in-Sentencing Act based on the plain language of the relevant statutory provisions in effect at the time of petitioner's conviction and sentence. Given the explicit definition of a life sentence as a 45 year term in Section 4346(c), and the clear absence of similar language in Section 4348, the Court is persuaded that the plain language of the two statutory provisions fairly warned Petitioner that his life sentence would only be considered a 45 year term for the purpose of determining his parole eligibility date, and not for determining a conditional release date.[2] In turn, because the Delaware Supreme Court's construction of Section 4346(c) and Section 4348 in Evans II was based on the plain language of those provisions, the Court concludes that the holding in Evans II did not deprive Petitioner of his due process right of fair warning.

Petitioner also suggests, at least implicitly, that the Evans II court violated the fair warning requirement of the due process clause by departing from its own precedent established in Evans I. (D.I. 2, at p.45.) As an initial matter, the Court concludes that Evans I is irrelevant to the instant due process analysis because the Delaware Supreme Court withdrew the Evans I

---

[2] Section 4346 is entitled "Eligibility for parole," and subsection (c) of § 4346 specifically asserts that a life sentence is to be considered a 45 year term for the purposes of the section. In contrast, § 4348 is entitled "Release upon merit and good behavior credits," and does not contain any provision or explanation regarding a life sentence.

16

decision in Evans II, and therefore, Evans I does not constitute binding Delaware precedent and has no legal effect.[3] Furthermore, Evans II did not overrule Crosby or establish a new principle of law, but only clarified that the holding in Crosby applies to life sentences imposed on habitual offenders after the enactment of the Truth-in-Sentencing Act.[4] Because the factual

---

[3] To the extent Petitioner contends that the Delaware Supreme Court violated his procedural due process rights by withdrawing Evans I, the Court concludes that his argument lacks merit. As explained in Evans II, the Delaware Supreme Court's opinion in Evans I was not final when the Delaware Supreme Court withdrew it in Evans II. Evans, 872 A.2d at 541. Although infrequently exercised, courts do, as a general rule, have the authority to rescind orders within the term in which they were entered. See United States v. Benz, 282 U.S. 304, 306-07 (1931)(stating general rule that judgments, decrees, and orders in civil and criminal cases may be modified by the court within the term in which they entered); see cf. Gondeck v. Pan Am World Airways, Inc., 382 U.S. 25 (1965)(reopening a final judgment in the interests of justice).

[4] In Evans II, the Delaware Supreme Court discounted as "obiter dicta" the statements it made in Crosby that § 4348 incorporated the definition of a life sentence contained in § 4346(c) as being a fixed term of 45 years for life sentences imposed both before and after the enactment of the Truth-in-Sentencing Act. The Evans II court also discounted as overbroad certain language contained in Jackson:

> When Jackson was decided in 1997, we stated that section 4348 did not apply to **any** life sentence. That statement was also overbroad. In Jackson, we should have more accurately stated that section 4348 did not apply to any life sentence with the possibility of parole that was imposed **before the effective date of Truth-in-Sentencing**. . . . Thus, "to the extent" we stated that Jackson was overruled by Crosby, it was only to the extent that the unqualified reference in Jackson to "any life sentence" was overbroad and was not limited to the issue presented by Jackson: pre-Truth-in-Sentencing life sentences with the possibility of parole.

17

situation presented in Crosby differs from the factual situation presented in Evans II, the Court concludes that the Evans II court did not act unforeseeably in issuing a different holding than the one it issued in Crosby.

In sum, the Court concludes that Evans II was not unexpected and indefensible in light of the plain language of the two statutory provisions at issue here and in light of the Delaware case law in effect at the time Petitioner was sentenced. The retroactive application of Evans II to Petitioner's sentence did not result in the unforeseeable reduction or removal of good time credits from Petitioner's record because he never had a right to automatic or conditional release under Section 4348. At most, Petitioner had a right to be considered for parole under Section 4346(c), and Evans II did not eliminate Petitioner's opportunity to obtain such release. Therefore, the Court concludes that the Delaware Supreme Court's denial of Petitioner's Due process claim was neither contrary to, nor an unreasonable application of, clearly established Federal law. Accordingly, the Court will

---

Evans, 872 A.2d, at 558 (emphasis in original). The Evans II court held that, as clarified, both Crosby and Jackson remain good law, and persuasively explained why Evans' situation was governed by the clarified rule established in Jackson rather than by the clarified rule established in Crosby. Id.

Further, the Court notes that "obiter dicta" is not binding legal precedent. See Humm v. Aetna Casualty & Sur. Co., 656 A.2d 712, 716 (Del. 1995). Therefore, the Court concludes that the Delaware Supreme Court did not depart from prior precedent by discounting the "obiter dicta" contained in Crosby or Jackson.

18

dismiss Petitioner's claim for failing to warrant relief under § 2254(d).

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. See 3d Cir. L.A.R. 22.2 (1997). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court has concluded that the Petition must be denied. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Therefore, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be denied.

An appropriate Order will be entered.

19